UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDDIE WANSLEY, JR., <br><br> Petitioner, <br> v. <br><br> JIM HALL, Warden, <br><br> Respondent. | Civil No. 05-1638-IEG(LSP) <br><br> REPORT AND RECOMMENDATION: DENYING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS |

## I. Introduction

Eddie Wansley, Jr., (hereinafter "Petitioner") a prisoner proceeding with counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his San Diego Superior Court conviction for two counts of robbery in the first degree and a 10-year sentencing enhancement for using a gun in the commission of the robbery.

Petitioner claims that he suffered ineffective assistance of counsel and that there was insufficient evidence to convict him. After considering the Petition and the Respondent's Answer, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus be

**DENIED.**

## II. Procedural Background

On March 17, 2003, after a jury trial, Petitioner was found guilty of two counts of residential robbery. (Cal. Penal Code §§ 211, 212.5(a)) (Resp't Answer at 1.) The jury also found Petitioner guilty of personally using a firearm during the commission of those robberies. [Cal. Penal Code § 12022.53(b)] (*Id.*) In a bifurcated hearing, the trial court found true that Petitioner had two prior strike convictions, [Cal. Penal Code §§ 667(b)-(I), 11780.12, 668], a prior serious felony conviction [Cal. Penal Code § 667(a)(1)] and that he had served a prior prison term. [Cal. Penal Code §§ 667.5(b), 668] (*Id.* at 1-2.)

On May 15, 2003, the trial court sentenced Petitioner to 40 years to life in state prison after denying a Motion to Dismiss the strike prior. (Resp't Lodgment 2 at 2.) He is imprisoned for the two charges concurrently. Petitioner's sentence includes 25 years to life for conviction of residential robbery with two strike priors, enhanced 10 years for personal use of a firearm, plus 5 years for conviction of a prior serious felony. (*Id.*)

On May 16, 2003, Petitioner filed a timely Notice of Appeal to the California Court of Appeal. (Resp't Lodgment 1 at 3.) On April 13, 2004, the Court of Appeal issued a written, reasoned decision that affirmed the judgment of the trial court. (Resp't Lodgment 2.)

On July 2, 2004, Petitioner filed a Petition for Review in the California Supreme Court. (Resp't Lodgment 3.) On August 11, 2004, the California Supreme Court denied the Petition for Review without comment. (Resp't Lodgment 4.)

On October 17, 2004, Petitioner filed a First Amended Petition

for Writ of Habeas Corpus.  (Doc. No. 25 at 1.)  On January 18, 2006, Respondent filed a Motion to Dismiss, asserting that one of the claims of ineffective assistance of counsel was unexhausted.  (*Id.*)  On May 15, 2006, this Court stayed the case to give Petitioner the opportunity to exhaust his claim.  (*Id.*)  On April 1, 2008, the District Judge assigned to this case lifted the stay because Petitioner was not diligently seeking exhaustion of his claim and dismissed that unexhausted claim from his Petition.  On May 15, 2008, Respondent filed an Answer to the Petition.  Petitioner did not file a Traverse to Respondent's Answer.

### III. Factual Background

The following statement of facts is substantially taken from the California Court of Appeal opinion, *People v. Wansley*, No. SCD171136, slip op. (Cal. Ct. App. April 13, 2004).  (Resp't Lodgment 2.)  This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  28 U.S.C.A. § 2254(e)(1); *See also, Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).  The facts as found by the state appellate court are as follows:

Eric Charkins and Jeremy Espeleta shared an apartment located in San Diego near the La Mesa city limits.  A friend and coworker of Charkins, Natasha Pasko, also lived in the apartment complex.  Charkins and Espeleta ran a small recording studio from their

apartment, with equipment valued at $4,000[1]. (Resp't Lodgment 2 at 2.) Charkins kept his recording equipment in a locked, walk-in closet in his bedroom. (Resp't Lodgment 6, Volume 2 at 157.) The apartment had one bedroom. (*Id.* At 27.) Espeleta had moved in and been sleeping in the living room for about two months prior to Petitioner's crimes. (*Id.* at 35-36.)

During the summer of 2003, Charkins and Pasko attended car races held in Kearney Mesa. There, Pasko introduced Charkins to Petitioner. (Resp't Lodgment 2 at 2.) Charkins dated Pasko for a short time during the summer, but he had not communicated with her for about a month when she called him in early September 2003. (Resp't Lodgment 6, Volume 2 at 106-07.) On September 7, 2003, Pasko and Petitioner visited Charkins at Charkins' apartment. The three talked about music, recordings and similar topics for 20 minutes. (Resp't Lodgment 2 at 2.)

Two days later, Petitioner and a companion returned to Charkins' apartment. Petitioner knocked on the apartment door and when asked who was knocking, he replied, "Eddie, Natasha's friends (sic)." Charkins let them inside. Shortly afterwards, Espeleta came home from work and introduced himself to the two men. At trial, Espeleta identified Petitioner as being "Eddie." (Resp't Lodgment 2 at 2-3.)

Suddenly, Petitioner pulled out a gun, pointed it at Espeleta and ordered Espeleta and Charkins to lie "face on the ground." Petitioner and his companion ransacked the apartment and took the recording equipment. Petitioner also went through Espeleta's wallet and took his money. (Resp't Lodgment 2 at 3.) At one point during the

---

[1] Charkins testified at trial the equipment was worth $4000. (Resp't Lodgment 6, Volume 2 at 101.) However, the California Court of Appeal, in its Statement of Facts, stated the value as $3000. (Resp't Lodgment 2 at 2.)

robbery, when Charkins lifted his head, Petitioner put the gun to the back of his head and said, "We'll bust caps." (Resp't Lodgment 6, Volume 2 at 114.)  Before leaving, Petitioner and his companion told the victims, "We know everything about you.  Don't try anything funny." (Resp't Lodgment 6, Volume 2 at 119.)

After the Petitioner and his companion left, Charkins and Espeleta went to a neighbors' apartment and told them what had occurred.  Charkins said "Eddie," a man who had been with Pasko at Charkins's apartment a few days earlier, had robbed him. (Resp't Lodgment 2 at 3.)  Charkins appeared "out of breath," was "ghost-white, and freaking out." (Resp't Lodgment 6, Volume 2 at 153.) Espeleta "couldn't stand still," "double-check[ed] the locks," and "was walking around in circles." (Resp't Lodgment 6, Volume 2 at 154.)  Charkins and Espeleta appeared terrified.  The neighbors urged Charkins to call the police.  He declined, stating that he feared for his life.  Charkins and Espeleta spent the rest of the night at a friend's house. (Resp't Lodgment 2 at 3.)

The day after the robbery, Charkins called the police and reported the incident as a burglary.  The next day, at the urging of a friend, Tiffany McDuffie, Charkins told the police that the incident was a robbery. (Resp't Lodgment 2 at 3.)

San Diego Police Detective Melvin Allen was assigned to investigate.  Allen spoke with various possible witnesses, including the victims, who had moved to northern California within weeks after the incident.  Allen assembled a photographic lineup that included a photograph of Petitioner. (Resp't Lodgment 2 at 3.)  Allen initially asked McDuffie to identify Petitioner. (Resp't Lodgment 6, Volume 3 at 235.) She identified him as picture #3. (*Id.*)  A few weeks later,

Allen sent another photographic lineup to Charkins in northern California. (Resp't Lodgment 6, Volume 3 at 235.) Charkins[2] identified photograph #3, Petitioner, as one of the robbers. (*Id.* at 235.) In between the two photographic lineups, Charkins and McDuffie spoke several times by phone about the case. (*Id.* at 222.) Allen spoke with Charkins. Charkins told Allen about the robbery and said he did not initially tell the truth about the nature of the crime because he was afraid. In November 2003, Allen arrested Petitioner. (Resp't Lodgment 2 at 3.) When the police searched Petitioner's car, home and workplace, they did not find a gun or any of the stolen electronic equipment. (Resp't Lodgment 6, Volume 3 at 241-44.)

At trial, Petitioner presented his wife and father as alibi witnesses. Petitioner's wife testified he was home on the night of the robbery. (Resp't Lodgment 2 at 4.) He left only for a short time to pick up a battery for his son's birthday present at a nearby toy store. (Resp't Lodgment 6, Volume 3 at 274.) Petitioner's father testified that he spoke with his son by telephone about midnight on the night of the robbery. (Resp't Lodgment 2 at 4.)

### IV. Standard of Review

The Court reviews federal habeas corpus claims under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) modified the statute by creating more stringent standards, and those standards apply to this claim since it was filed after AEDPA was enacted in 1996. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). 28 U.S.C. § 2254(a) sets forth the following scope of review for federal habeas corpus claims:

---

[2] There is no evidence to support that Allen ever sent the photographic lineup to Espeleta. (Resp't Lodgment 6, Volume 2 at 55-56 and Resp't Lodgment 6, Volume 3 at 237.)

>   The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court <u>only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States</u>.

28 U.S.C. §2254(a) (West 2008) (emphasis added).

As modified by the AEDPA, the appropriate standard contained in 28 U.S.C. § 2254(d) reads:

>   (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any <u>claim that was adjudicated on the merits</u> in State court proceedings unless the adjudication of the claim:
>
>   (1) resulted in a decision that was <u>contrary to</u>, or involved an <u>unreasonable application of</u>, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (West 2008) (emphasis added).

A petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2) for the court to issue a writ of habeas corpus. The "contrary to" clause of § 2254(d)(1) must be interpreted to mean that a federal habeas court may grant relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant relief in two scenarios. The first scenario occurs when the state court identifies the correct governing principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. 529 U.S. at 407. A second scenario occurs where a state court decision either

unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or where the state court refuses to extend a legal principle from Supreme Court precedent to a new context where it should apply. *Id.* at 407.

To define what qualifies as an "unreasonable application of . . . clearly established Federal law . . . " the federal court should ask whether the state court's application of clearly established federal law was objectively unreasonable. *Id.* at 409. An unreasonable application of federal law is different from an incorrect application of federal law. *Id.* at 410.

The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state court decision. *Id.* at 412. When the state's highest court does not give a reasoned decision, federal habeas courts should "look through" to the last reasoned state court decision on the issue and presume that the unexplained denial rests on the same grounds. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

In this case, Petitioner claims his constitutional rights to effective assistance of counsel and due process were violated. Thus, this Court may only grant habeas relief where the state court arrived at a decision with regard to the claims that were "contrary to" or involved an "unreasonable application of" clearly established federal law.

### V. Discussion

Petitioner asserts two claims for habeas relief: (1) his Sixth Amendment right to effective assistance of counsel was violated when trial counsel failed to investigate, and object to, the photographic

lineup; and (2) his due process rights were violated because there was insufficient evidence to support his convictions. [Doc. No. 5 at 22(a)-(b)]

Respondent argues that both claims should be denied because the state court properly determined them on the merits. (Doc. No. 45 at 4-9) Respondent further argues the state court's decision was neither contrary to, nor an unreasonable application of, clearly established law, and did not involve an unreasonable determination of facts. (Doc. No. 45 at 4-9)

**A. Ineffective Assistance of Counsel**

Petitioner argues that he received ineffective assistance of counsel because his trial attorney failed to investigate and object to the photographic lineup used as evidence at his trial. Respondent argues that the state courts reasonably determined that there is no evidence in the record to prove Petitioner's attorney deficiently investigated the photographic lineup or that an objection to the lineup would have resulted in a more favorable verdict. (Doc. No. 45 at 5)

The threshold question under AEDPA is whether Petitioner seeks to apply a rule of law that was clearly established at the time his state court conviction became final. The merits of his claim are squarely governed by *Strickland v. Washington*, 466 U.S. 668(1984). *Williams*, 529 U.S. at 390. The *Williams* court stated it is past question that the rule set forth in *Strickland* qualifies as clearly established federal law. *Id.* at 391.

To establish ineffective assistance of counsel Petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced

the defense, which requires a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Williams,* 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 688 and 694).

The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. *Strickland*, 466 U.S. at 697. The Ninth Circuit has rejected the notion that, in addition to *Strickland*'s prejudice requirement, habeas courts must conduct a standard harmless-error review of any *Strickland* violations under *Brecht v. Anderson*, 507 U.S. 619, 637 (1993). *Jackson v. Calderon*, 211 F.3d 1148, 1154 n.2 (9th Cir. 2000). "The *Strickland* prejudice analysis is complete in itself; there is no place for an additional harmless-error review." *Id.* (citing *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996)).

Petitioner raised his claim of ineffective assistance of counsel in the Court of Appeal on direct review and it was denied in a reasoned opinion. (Resp't Lodgment 2.) He raised it again in his Petition for Review in the California Supreme Court and it was denied without comment. (Resp't Lodgment 4.) Thus, this Court must look through to the opinion of the Court of Appeal. *Ylst*, 501 U.S. at 801-806; *Williams*, 529 U.S. at 412-13. In denying Petitioner's appeal, the California Court of Appeal stated:

> With the exception of not objecting to the photographic lineup, the record before this counsel does not include any information regarding the investigation taken by Wansley's counsel. Nor does it shed light on the performance of Wansley's counsel. Regarding failure to object to the photographic lineup, "[i]f the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. [Citation.] Otherwise, the claim is more appropriately raised in a petition for writ of

```
        habeas corpus. [Citation.]" (People v. Carter (2003) 30
        Cal.4th 1166,1211) (citing People v. Mendoza Tello (1997) 15
        Cal.4th 264, 266-267.)
```
(Resp't Lodgment 2 at 6-7.)

### 1. Deficiency Prong

The decision by Petitioner's trial counsel to neither investigate nor object to the photographic lineup does not amount to an unprofessional error of judgment. It is well established that a federal habeas court must apply a "heavy measure of deference" in scrutinizing counsel's tactical decisions. *Strickland*, 466 U.S. at 691.

Here, Petitioner fails to demonstrate that his attorney committed an unprofessional error of judgment when he did not object to the photographic lineup. In support of his contention, Petitioner alleges that McDuffie could have told Charkins that she identified Petitioner as photograph #3 in the photographic lineup array. Further, Petitioner states that Detective Allen kept his picture in the same spot for the photographic lineup that he sent to Charkins two weeks after McDuffie identified Petitioner. Petitioner states that there is evidence showing McDuffie and Charkins spoke several times a week over that period of time, that Charkins' identification of Petitioner was made because McDuffie gave him advance knowledge of his number position in the photographic lineup.

However, Petitioner has not produced any evidence to show his allegation to be anything but mere speculation. Petitioner's attorney's decision not to investigate and object to the photographic lineup was reasonable because Espeleta identified Petitioner in court at the preliminary hearing without previously viewing the photograph lineup. (Resp't Lodgment 6, Volume 2 at 53-56.) At trial, Espeleta's in-court identification of Petitioner served as independent evidence

of Petitioner's identity.

In addition, Petitioner's attorney may have also reasonably believed that even if the photographic lineup was unnecessarily suggestive, there was not a substantial likelihood of misidentification.  Charkins met Petitioner on at least two prior occasions before the robbery.  Charkins testified that Petitioner used his own name to gain entrance to the apartment before committing the robbery.  Under these circumstances, Petitioner's attorney could reasonably have decided that Charkins could and did validly identify Petitioner in the photographic lineup.  Charkins initially saw Petitioner through his apartment door's peephole, and for several minutes while they spoke and relaxed in his living room just prior to the robbery's commencement.  Thus, it is reasonable that Charkins had an ample opportunity to view and observe Petitioner in a setting devoid of any stress or trauma to cloud his focus or memory.

### 2. Prejudice Prong

Even assuming that counsel made a professionally unreasonable error in not investigating the photographic lineup, or objecting to it at trial, Petitioner still fails to satisfy the "prejudice" prong of the *Strickland* test.  "To show 'prejudice,' [Petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Williams,* 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 694).  A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Williams,* 529 U.S. at 391 (quoting *Strickland*, 466 U.S. at 694).

Here, Petitioner was not prejudiced because the evidence produced

at trial was adequate for a jury to find that he did in fact commit two counts of residential robbery. This is so because even if the photographic lineup and Charkins' identification of Petitioner were excluded from evidence, the jury still had sufficient evidence to believe the victims' account. Specifically, Charkins knew Petitioner from at least two previous encounters with him, had an ample opportunity immediately before the robbery to view him, and testified that he only let the assailants in because one of them explicitly identified himself as, "Eddie, Natasha's friend." Additionally, the victims' neighbors provided credible, unbiased testimony that both victims were extremely "freaked out" and appeared to be in shock just after the robbery occurred. Further, the neighbors testified they specifically remembered Charkins stating that "Eddie" had just robbed him.

Considering such evidence, the jury reasonably concluded that Petitioner did in fact rob the victims. Accordingly, this Court finds that Petitioner has not met his burden of demonstrating that the failure to investigate and object to the photographic lineup prejudiced the trial to such a degree that the result would have been different. This Court finds that the state court's denial of the claim was neither contrary to, not an unreasonable application of clearly established law. *See, Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254. Therefore, the Court RECOMMENDS that Petitioner's claim in this regard be **DENIED**.

### B. Insufficient Evidence

Petitioner alleges that there was insufficient evidence to support his conviction for residential robbery. Petitioner raised this claim in the Court of Appeal on direct review, and it was denied

in a reasoned opinion. (Resp't Lodgment 2.) He raised it again in his Petition for Review to the California Supreme Court, and it was denied without comment or citation. (Resp't Lodgment 4.) Thus, this Court must through look to the opinion of the Court of Appeal. *Ylst*, 501 U.S. at 801-806; *Williams*, 529 U.S. at 412-13.

In denying Petitioner's appeal, the California Court of Appeal stated:

> Wansley argues that substantial evidence does not support the convictions beyond a reasonable doubt. Wansley states the People's case fails because it is not supported by forensic evidence, such as fingerprints and recovery of the stolen property; there was "extremely suspect testimony" from the victims about the incident; Wansley's wife and father provided alibi testimony; and questions remain regarding the delay in arresting Wansley. He argues there is no solid, credible evidence to support his convictions beyond a reasonable doubt.
>
> We are required to affirm a judgment that is supported by substantial evidence. (*People v. Johnson, supra,* 26 Cal.3d at p. 576.) Substantial evidence is evidence of legal significance, reasonable in nature, credible and of solid value. (*People v. Samuel* (1981) 21 Cal.3d 489, 505.) We review the entire record in the light most favorable to the judgment below and presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. If the evidence permits a reasonable trier of fact to conclude the charged crime was committed, the opinion of a reviewing court that the circumstances may also be reconciled with a contrary finding does not warrant reversal. (See *Jackson v. Virginia* (1979) 443 U.S. 307, 318-19.)
>
> Here, Wansley's convictions are supported by the eyewitness identification of the victims. Wansley claims the record contains "no solid credible evidence of an indisputable nature" supporting the convictions. He essentially claims Charkins did not tell the truth to the police when initially reporting the crime, and Charkins identification testimony conflicts with the alibi testimony of Wansley's wife and father. In determining whether a conviction is supported by substantial evidence, we do not usurp the trier of fact's assessment of credibility:
>
> "'Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given

> by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]' [Citations.]" (*People v. Thornton* (1974) 11 Cal.3d 738, 754, disapproved on other grounds in *People v. Flannel* (1979) 25 Cal.3d 668, 684.)
>
> The jury obviously found Charkins's testimony credible. Even if his testimony is to be viewed with "justifiable suspicion" because "he wasn't thinking right" and initially reported the robbery as a burglary, the testimony is not physically impossible nor is its falsity apparent. We determine substantial evidence supports the convictions.

(Resp't Lodgement 2 at 4-6.)

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that the Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. Clearly established law from *Jackson v. Virginia*, 443 U.S. 307 (1979), states that sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. In determining whether sufficient evidence exists to support a conviction, the reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992).

Under *Jackson*, this Court must look to the state criminal law in determining whether a factfinder could have found Wansley guilty beyond a reasonable doubt. 443 U.S. at 324.

California Penal Code § 211 requires proof that:

> Every person who takes personal <u>property in the possession</u> of another, <u>against the will</u> and <u>from the person</u> or immediate presence of that person, accomplished <u>by means of force or fear</u> and with the <u>specific intent</u> permanently to deprive that person of the property, is guilty of the crime of robbery, in violation of penal code section 211.

(Resp't Lodgment 6, Volume 4 at 340.) (emphasis added)

Viewing the evidence in this case in the light most favorable to the verdict, a reasonable juror could have found Petitioner guilty of violating § 211 beyond a reasonable doubt. Regarding the possession element, Charkins testified that he possessed music recording equipment in his apartment worth around $4000. (Resp't Lodgment 6, Volume 2 at 101.) Espeleta testified that he possessed five or six dollars in his wallet just before the robbery occurred. (*Id*. at 42.) There was no dispute at trial about the property Charkins and Espeleta possessed or the property that was taken. Therefore, this testimony was sufficient for a reasonable juror to find that both Charkins and Espeleta possessed property of some value. Additional testimony supports that Charkins' music equipment was kept within a locked closet in his bedroom, and that Espeleta kept the wallet in his back pocket. (*Id*. at 157 and 42.) Since the music equipment was kept in a locked, private residence and the wallet was securely carried on the victim's body, a reasonable juror could have found that the victims possessed their property within their immediate control in a way that they could retain possession.

Further, testimonial evidence presented at trial allowed a reasonable juror to conclude that the property at issue was taken against the victims' wills. At trial, evidence was presented that showed both victims explicitly stated that they never freely consented to give up their property.

16

05cv1638

Moreover, evidence presented at trial showed that the assailants used the threat of physical violence, injury, and possible death because the property was given up only after the Petitioner and an accomplice pulled out a gun and pointed it at the victims. (*Id.* at 113-14 and 41.) In support of this contention, both Charkins and Espeleta testified they were scared and fearful that they would be shot or killed. (*Id.* at 115 and 43.) Charkins testified that at some point during the robbery, he was told to keep his head down or else, "We'll bust caps." (*Id.* at 114.) Testimony given by the victims' neighbor further supports the victims' account of the robbery. The victims' neighbor testified that after the robbery, both victims appeared to be in shock and were shaken up to the point that they both refused to call police to report the crime. (*Id.* at 156.) In addition, evidence was also presented that both victims moved to northern California within weeks of the robbery. (*Id.* at 186.) In summary, the totality of the evidence gave a reasonable juror sufficient evidence to conclude that the property was taken either by force or fear.

Regarding the final element of Cal. Penal Code § 211, a reasonable juror would be able to find that the property was taken with the specific intent to permanently deprive the victims. The record indicates that the music equipment and money was knowingly taken by threat of physical violence with the desire to never be returned to the victims because the robbers threatened to come back and kill the victims if they called the police and reported the robbery. (*Id.* at 156.) Thus, the jury had sufficient evidence to reasonably conclude that Petitioner intended to permanently deprive the victims of their property before or during the robbery.

In summary, this Court finds there was sufficient evidence presented in the trial record to convict Petitioner of the two counts of residential robbery. *See, Jackson*, 443 U.S. at 319. The state court's denial of the claim was neither contrary to, not an unreasonable application of, clearly established law. *See, Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254. Therefore, the Court RECOMMENDS that Wansley's claim in this regard be **DENIED**.

### VI. Conclusion and Recommendation

The Court, having reviewed Wansley's Petition for Writ of Habeas Corpus, Respondent's Answer to the Petition for Writ of Habeas Corpus, the documents lodged therewith, and the pertinent authorities pertaining to Petitioner's claims, hereby RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus be **DENIED**.

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than August 29, 2008, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than September 15, 2008. The parties are advised that failure to file objections within the specified time may waive the right to raise

\\
\\
\\
\\

those objections on appeal of the Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  July 28, 2008

_____
Hon. Leo S. Papas
U.S. Magistrate Judge